```
                                    ┌─────────────────────────────┐
                                    │ ___ FILED      ___ LODGED   │
                                    │ ___ RECEIVED   ___ COPY     │
                                    │                             │
                                    │      MAR 0 6 2002           │
                                    │                             │
                                    │   CLERK U S DISTRICT COURT  │
                                    │   DISTRICT OF ARIZONA       │
                                    │  BY_____ DEPUTY  │
                                    └─────────────────────────────┘
```

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Gregory Crane, an Arizona Resident,)<br>Matthew and Markson, LTD, an Antigua)<br>Corporation, )<br>                    )<br>          Plaintiffs, )<br>                    )<br>vs.                 )<br>                    )<br>NeuStar, Inc., et al., )<br>                    )<br>          Defendants. )<br>_____) | No. CIV 01-1245-PHX-JAT<br><br>**ORDER** |

     Pending before this Court are Defendants' Motion to Dismiss Complaint Under Federal Rules of Civil Procedure 12(b)(1), 12(b)(2) and 12(b)(6) and Supporting Memorandum (Doc. #5) and Plaintiff's Response to Motion to Dismiss Complaint and Alternatively Motion to Amend (Doc. #16). Plaintiffs claim ownership rights in trade names, trademarks and rights associated with copyrights in URLs,[1] which Plaintiffs presently

---

    [1] Every document on the Internet has a unique "URL" (Universal Resource Locator or Uniform Resource Locator) that identifies its physical location on the Internet's infrastructure. *In re Doubleclick Inc. Privacy Litigation*, 154 F. Supp. 2d 497, 501 (S.D.N.Y. 2001); *see also Nissan Motor Co., Ltd v. Nissan Computer Corp.*, 2001 U.S. Dist. LEXIS 20575, at *18 n. 7 (C.D. Cal. Dec. 5, 2001). For example, the URL for the web page for the U.S. District Court for the District of Arizona is <http://www.azd.uscourts.gov>. The TLD is ".gov" and the exclusive second level domain name is "uscourts". *See Image Online Design, Inc. v. Core Assoc.*, 120 F. Supp. 2d 870, 878 (C.D. Cal. 2000).

1  use on and through the Internet, as well as in interstate commerce.  In the Complaint,
2  Plaintiffs allege copyright infringement, unfair competition and conversion.

3       Defendants move to dismiss Plaintiffs' Complaint for lack of subject matter
4  jurisdiction, lack of personal jurisdiction, and failure to state a claim upon which relief may
5  be granted.  Plaintiffs oppose Defendants' motion to dismiss the Complaint (hereinafter
6  "Response" or "Resp."), and alternative to dismissal, seek leave to amend the Complaint.
7  Rule 15(a) of the Federal Rules of Civil Procedure provides that leave to amend is freely
8  granted; however, the Court need not grant leave when the proposed amendment would be
9  futile.  *Hinton v. NMI Pac. Enter.*, 5 F.3d 391, 395 (9th Cir. 1993) ("if the amendments to
10 the complaint will fail to cure fatally defective allegations, refusal to allow leave to file the
11 amended complaint is acceptable.").  Accordingly, the Court considers the sufficiency of the
12 allegations presented in the First [Proposed] Amended Complaint (hereinafter "Am.
13 Compl.") attached as Exhibit B to Plaintiffs' Response to determine whether leave to amend
14 shall be granted.

15      Plaintiffs' First [Proposed] Amended Complaint asserts six bases for relief:  (1)
16 Federal Copyright Infringement; (2) Federal Unfair Competition; (3) State Unfair
17 Competition; (4) State Trademark Infringement; (5) Common Law Trademark Infringement;
18 and (6) Conversion.

19 **I.    BACKGROUND**

20      Plaintiffs claim ownership in the trade names and/or trade marks and rights associated
21 with copyrights in the following names and URLs: "sex.biz;" "www.sex.biz;"
22 "yellowpages.biz;" www.yellowpages.biz;" "movie.biz;" and "books.biz." (Am. Compl.,
23 ¶ 6).  Plaintiffs allege that Defendants have infringed and threaten to infringe upon
24 Plaintiffs' rights by converting the rights to Plaintiffs' trade names and URLS for their
25 personal use and by selling these rights to potential innocent purchasers.  (*Id.* at ¶ 7).
26 Furthermore, Plaintiffs allege that Defendants have been unjustly enriched by appropriating
27 Plaintiffs' trade names and URLs. (*Id.* at ¶ 11).

28

1    Defendants maintain, and Plaintiffs do not dispute, that NeuLevel, Inc., formerly

2    JVTeam LLC (a joint venture between NeuStar, Inc. and Melbourne IT Ltd.), operates as

3    the registry for the generic top-level domain ".biz." (Mot. to Dismiss, p. 3).  While

4    NeuLevel has been accepting IP Claims and domain name applications, at the time of

5    Defendants' motion, the registration period for the ".biz" domain names had not begun.

6    (*Id.*).  Nor has NeuLevel issued any ".biz" domain name registrations.  (*Id*).

7    Essentially, Plaintiffs claim that as owners of copyright and trademark rights in the

8    aforementioned names and marks, any registration and subsequent sale of domain names

9    incorporating those names and marks infringe on Plaintiffs' rights.  A cursory background

10    discussion of the Internet and domain names may be useful in understanding the nature of

11    this action.   "The Internet is an international 'supernetwork' connecting millions of

12    individual computer networks and computers.  *Lockheed Martin Corp. v. Network Solutions,*

13    *Inc.*, 985 F. Supp. 949, 951 (C.D. Cal. 1997), *affirmed* 194 F.3d 980 (9th Cir. 1999).  The

14    most familiar form of presenting information is the World Wide Web ("Web").  *Id.*  The

15    Web functions through a linked structure which allows users to access sites and pages by

16    selecting a link, causing the document to be displayed automatically, along with a new set

17    of links that the user may follow.  *Id.* at 952.

18    Web sites are currently addressed using the Internet "domain name system," which

19    employs a numbering system called the "Internet Protocol," also known as the "IP number,"

20    that gives each individual computer or network a unique numerical address on the Internet.

21    *Id.*   However, to simplify the process for users to locate sites on the Web, specialized

22    computers known as "domain name servers" maintain tables linking domain names to IP

23    numbers.  *Id.*  Thus, a user can access a particular site by entering the site's domain name

24    rather than its IP number.

25    Domain names usually consists of two levels: a Second Level Domain and a Top

26    Level Domain ("TLD").  An example of a TLD is ".com," which has been used by most

27    businesses with a presence on the Internet.  Second Level Domain names, which are the

28

1  name just to the left of the ".com," must be exclusive. *Id.* As such, domain names, like

2  telephone numbers or addresses, enable networks to users to locate a particular site on the

3  Web. If a user knows or can deduce the domain name associated with a Web site, the user

4  can access the Web site directly by typing the domain name into a Web browser. *Id.*

5  Registration for domain names using the TLDs ".com," ".net," ".org," ".edu," and

6  ".gov" are maintained by Network Solutions, Inc. ("NSI"). NSI's role is the Internet domain

7  name system is to manage certain domain names. *Id.* at 953. NSI screens domain name

8  applications against its registry to prevent repeated registrations of the same name, and also

9  maintains a directory linking domain names with the IP numbers of domain name servers.

10 *Id.* Recently, the use of seven new generic top-level domain names have been approved,

11 including the ".biz" TLD at issue in this action.

12 Plaintiffs contend that NeuStar, Inc. is the assignee of the ".biz." root. (Resp., p. 8).

13 However, Plaintiffs allege that Plaintiffs are the registered owners of the aforementioned

14 names. As Plaintiffs clarify in their Response, Plaintiffs and Defendants are "competing for

15 the use and ownership of valuable URL's [*sic*]; the competition in the domain market is

16 acute and substantial." (*Id.*, p. 11). Although Plaintiffs refer to URLs rather than domain

17 names in their complaint, the dispute that exists is over the rights associated with the

18 aforementioned domain names.

19 **II.    SUBJECT MATTER JURISDICTION**

20 Plaintiffs assert that this Court has jurisdiction over this case pursuant to 28 U.S.C.

21 § 1332. In order for this Court to exercise diversity jurisdiction over this case, the parties

22 must be citizens of different states and the amount in controversy must exceed $75,000. 28

23 U.S.C. § 1332. Here, Plaintiffs allege that Plaintiff Crane is a resident of Arizona, and

24 Plaintiff Matthew and Markson, Ltd. is an Antigua corporation. Furthermore, Plaintiffs

25 allege on information and belief that Defendant NeuStar, Inc. is a District of Columbia

26 Corporation, and Defendant JVTeam LLC is a Virginia Corporation. (Am. Compl., ¶¶ 3-4).

27 As to the amount in controversy, Plaintiffs allege on information and belief that the names

28

1    and URLs in dispute have a value of between $100,000.00 and $60,000,000.00. (*Id.* at 8).

2    Thus, diversity jurisdiction exists in this case.[2]

3    **III.    PERSONAL JURISDICTION**

4    **A.    Standard for Dismissal**

5    Because there is no federal statute governing the exercise of personal jurisdiction,

6    Arizona's long-arm statute applies. Arizona Rule of Civil Procedure 4.2(a) provides that

7    a court may exercise jurisdiction over nonresident parties to the maximum extent permitted

8    by the Constitution of the United States. Thus, the Court may exercise jurisdiction over

9    Defendants so long as doing so comports with due process. *Cybersell, Inc. v. Cybersell,*

10   *Inc.*, 130 F.3d 414, 416 (9th Cir. 1997).

11   The burden of establishing jurisdiction falls on Plaintiff; however, to survive a

12   motion to dismiss for lack of personal jurisdiction, Plaintiffs need only make a prima facie

13   showing of jurisdiction. *Ziegler v. Indian River County*, 64 F.3d 470, 473 (9th Cir. 1995).

14   In addition, for the purposes of deciding jurisdiction, the Court accepts Plaintiffs' allegations

15   as true. *Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*, 223 F.3d 1082, 1087 (9th Cir.

16   2000).

17   **B.    General Jurisdiction**

18   Personal jurisdiction may be founded on either general or specific jurisdiction.

19   *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1320 (9th Cir. 1998). General jurisdiction

20   exists if the nonresident has continuous and substantial contacts with the forum such that the

21   exercise of jurisdiction over the defendant comports with the traditional notions of fair play

22   and substantial justice. *Cybersell*, 130 F.3d at 416. Factors to be taken into consideration

23   are whether the defendant makes sales, solicits or engages in business in the state, serves the

24   state's market, designates an agent for service of process, holds a license, or is incorporated

25   there. *Bankcroft*, 223 F.3d at 1086.

26   —————————————

27   [2]  Plaintiffs also allege that this Court has original jurisdiction over this case pursuant
     to 28 U.S.C. §§ 1331 and 1338 *et seq*. (Am. Compl., ¶ 2). The Court does not reach these

28   alternative bases for subject matter jurisdiction.

1    Here, Defendants submit a declaration by NeuStar's General Counsel stating that
2    NeuStar is a Delaware corporation with its principal place of business and corporate
3    headquarters in Washington, D.C. (Decl. of Edward G. Freitag, ¶¶ 1-2). NeuStar maintains
4    offices in Virginia, Illinois, Washington, California and London. (*Id.* at ¶ 2). NeuStar has
5    never maintained offices in Arizona, is not qualified or licensed to do business in Arizona,
6    has never based employees in Arizona, has never owned property in Arizona, and does not
7    maintain any bank accounts in the State. (*Id.* at ¶ 3). However, in connection with its role
8    as the North America Numbering Plan Administrator, NeuStar has filed a petition for area
9    code relief on behalf of the Arizona telecommunications industry and attended and
10   participated in public hearings in the State and proceedings before the Arizona
11   telecommunications commission. (*Id.* at ¶ 4). Based on Mr. Freitag' declaration, and
12   Plaintiffs having alleged no basis for the exercise of general jurisdiction, Defendant
13   NeuStar's limited contacts with the State are not sufficiently "continuous" or "systematic
14   and substantial" so as to confer general jurisdiction. With regard to Defendant JVTeam
15   LLC, Mr. Freitag's declaration states that JVTeam LLC was a Delaware corporation which
16   no longer exists. Thus, the exercise of general jurisdiction over JVTeam LLC is not proper
17   either.

18                    **C.     Specific Jurisdiction**

19         On the other hand, specific jurisdiction exists if: (1) the defendant has performed
20   some act or consummated some transaction within the forum or otherwise purposefully
21   availed himself of the privileges of conducting activities in the forum; (2) the claim arises
22   out of or results from the defendant's forum-related activities; and (3) the exercise of
23   jurisdiction is reasonable. *Cybersell*, 130 F.3d at 416.

24         The "purposeful availment" requirement may be satisfied if all of the elements of the
25   effects test are met: (1) intentional actions (2) expressly aimed at the forum state (3) causing
26   harm, the brunt of which is suffered — and which the defendant knows is likely to be
27   suffered — in the forum state." *Core-Vent Corp. v. Nobel Indus. AB*, 11 F.3d 1482, 1486

28

1 (9th Cir. 1993) (citing *Calder v. Jones*, 465 U.S. 783, 789 (1984)).  The Ninth Circuit has

2 held that purposefully registering someone else's trademark as a domain name for the

3 purpose of extorting money from the trademark holder satisfies the purposeful availment

4 requirement necessary for specific jurisdiction.  *Panavision*, 141 F.3d at 1322.  However,

5 simply registering someone else's trademark as a domain name and posting a website with

6 that domain name on the Internet is not sufficient to subject a nonresident to jurisdiction.

7 *Cybersell*, 130 F.3d 418.  The important distinction between these cases can be described

8 as "express aim" at the forum state.  *Bancroft*, 223 F.3d at 1087 (discussing *Calder v. Jones*,

9 465 U.S. 783, 789 (1984)).  Express aiming encompasses wrongful conduct individually

10 targeting a known forum resident.  *Id.*

11     In *Panavision*, the plaintiff Panavision attempted to register a website on the Internet

12 with a domain name employing its registered trademark "Panavision;" however, defendant

13 Toeppen had already registered a website under that domain name.  141 F.3d at 1319.

14 Under these facts alone, Toeppen would not have been subject to personal jurisdiction under

15 *Cybersell*.  *See id.* at 1322.  However, Toeppen demanded payment from Panavision in

16 exchange for the domain name, and when Panavision refused, Toeppen registered

17 Panavision's other trademark "Panaflex" as the domain name "Panaflex.com."  *Id.* at 1321.

18 Panavision alleged that Toeppen engaged in the business of stealing trademarks, registering

19 them as domain names on the Internet and then selling the domain names to the rightful

20 trademark owners.  *Id.*  The *Panavision* court determined that such allegations were

21 sufficient for the exercise of personal jurisdiction.

22     Here, Plaintiffs allege that Defendants have infringed on Plaintiffs' copyright and

23 trade name rights by converting and selling the names to innocent purchasers.  Plaintiffs'

24 allegations of intentional wrongful conduct aimed at Plaintiff are sufficient for the exercise

25 of personal jurisdiction.  *See id.*  Accordingly, Defendants' motion to dismiss for lack of

26 personal jurisdiction is denied.

27

28

1

## IV.    FAILURE TO STATE A CLAIM

2      On a motion to dismiss, a complaint shall not be dismissed for failure to state a claim

3  "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his

4  claims which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).

5  The Court must accept as true all material allegations in the complaint, as well as reasonable

6  inferences to be drawn from them.  *See Pareto v. F.D.I.C.*, 139 F.3d 696, 699 (9th Cir.

7  1998).  Moreover, the complaint must be read in the light most favorable to the plaintiff.

8  *See id.*  However, the Court need not accept as true unreasonable inferences, unwarranted

9  deductions of fact, or conclusory legal allegations cast in the form of factual allegations. *See*

10 *Western Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981).  In addition, a

11 document attached to and submitted with a complaint is treated as part of the complaint, and

12 is properly considered on a motion to dismiss.  *Hal Roach Studios, Inc. v. Richard Feiner*

13 *& Co.*, 896 F.2d 1542, 1555 (9th Cir. 1989).

14     ### A.    Federal Copyright Infringement

15     Defendants correctly assert that because Plaintiffs have not complied with 17 U.S.C.

16 § 411(a) governing copyright actions, Plaintiffs' copyright claim as stated in count one

17 should be dismissed.  The statute requires that Plaintiffs submit an application and pay the

18 registration fee for a copyright registration as a prerequisite to bringing a suit for

19 infringement.  17 U.S.C. § 411(a).  Plaintiffs submitted evidence of their application to the

20 Patent and Trademark Office to register their trademarks, but have not submitted evidence

21 of such an application to the Copyright Office.[3]  (*See* Attachments to Compl.).  The

22 Copyright Act requires that an application be filed with the Copyright Office, not the Patent

23 _____

24         [3]   Plaintiffs also attach a Notice to Registrar of Patents and Trademarks along with

25 their application for registration filed with the Patent and Trademark Office as evidence of
   application to the Copyright Office. (Pl.'s Resp., Ex. A). However, on a motion to dismiss,

26 the Court does not consider matters outside the pleadings. Because Plaintiffs have presented
   matters outside the pleadings for the Court's consideration, the Court may treat Defendants'

27 motion as one for summary judgment (*see* Fed. R. Civ. Proc. 12(b)); however, dismissal of

28 this claim does not require such conversion of Defendants' 12(b)(6) motion.

1    and Trademark Office, which is a separate entity governed by separate statutes. *Compare*

2    17 U.S.C. § 411(a) with 15 U.S.C. § 1051 (a)(1) (the owner of a trademark used in

3    commerce may request registration of its trademark on the principal register hereby

4    established by paying the prescribed fee and filing in the Patent and Trademark Office an

5    application and a verified statement).    As such, Plaintiffs' failure to comply with a

6    prerequisite of 17 U.S.C. § 411 compels dismissal of the federal copyright infringement

7    claim.

8    **B.    CONVERSION OF 12(b)(6) MOTION TO RULE 56 MOTION FOR SUMMARY JUDGMENT**

9    With regard to claims two through six, Defendants maintain that NeuLevel operates

10   as a domain name registry with the TLD ".biz." Defendants argue that pursuant to *Lockheed*

11   and its line of cases, a domain name registry such as NeuLevel cannot be held liable for

12   unfair competition or trademark infringement for its "use" of domain names. Because a

13   motion to dismiss is a determination of whether Plaintiffs have stated a claim upon which

14   relief may be granted, Defendants' defense is more properly asserted on a motion for

15   summary judgment.

16   Accordingly, pursuant to Defendants' motion at oral argument, the Court hereby

17   converts Defendants' 12(b)(6) motion to dismiss into a Rule 56 motion for summary

18   judgment as to claims two through six of Plaintiffs' First [Proposed] Amended Complaint.

19   In finding that Plaintiffs' proposed amendment fails to cure the defects in the Complaint as

20   to count one, the Court dismisses that claim with prejudice; however the Court is inclined

21   to grant Plaintiffs' Motion to Amend as to counts two through six. As such, the parties are

22   directed to supplement pleadings and present any other materials including affidavits in

23   support thereof with regard to a motion for summary judgment on claims two through six

24   of Plaintiffs' First [Proposed] Amended Complaint.

25   Based on the foregoing,

26

27

28

1   **IT IS HEREBY ORDERED** denying Defendants' Motion to Dismiss Complaint for
2   12(b)(1) lack of subject matter jurisdiction and 12(b)(2) lack of personal jurisdiction (Doc.
3   #5);
4   **IT IS FURTHER ORDERED** granting Defendants' 12(b)(6) Motion to Dismiss for
5   failure to state a claim as to count 1 for Federal Copyright Infringement;
6   **IT IS FURTHER ORDERED** converting the remainder of Defendants' 12(b)(6)
7   Motion to Dismiss for failure to state a claim to a Rule 56 Motion for Summary Judgment;
8   the parties shall have 20 days from the date of this Order to present all materials made
9   pertinent to such motion;
10  **IT IS FURTHER ORDERED** that Plaintiff's Motion to Amend (Doc. #16) is
11  granted as to counts 2 through 6; Plaintiff is ordered to file its First Amended Complaint
12  with the Clerk of the Court.

13
14  DATED this _*I8*_ day of February, 2002.
15
16
17                                    James A. Teilborg
18                                    United States District Judge
19
20
21
22
23
24
25
26
27
28